**MARKEY et al. v. BRUNSON.**

(Circuit Court of Appeals, Fourth Circuit. February 1, 1921.)

No. 1820.

Sales ⬤⟿284(1)—**Variation from guaranteed percentage in fertilizer held not breach of guaranty.**

In a contract for the sale of fertilizer guaranteed to contain stated percentages of ammonia, phosphate, and potash, "or equivalent to ammonia and potash," in which the price was fixed at so much per unit of each element, and the value of the phosphate was almost negligible compared with the value of the ammonia and potash, deficiencies in the quantity of phosphate, more than offset by excess quantities of ammonia and potash, so that the fertilizer shipped was worth more than sold, do not establish a breach of guaranty, which prevents recovery of the purchase price by the seller.

---

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Action by Frank S. Markey and another, copartners in business under the firm name of the Independent Pulverized Manure Company, against Peter C. Brunson. Judgment for defendant on directed verdict, and plaintiffs bring error. Reversed.

William H. Grimball, of Charleston, S. C. (Whaley, Barnwell & Grimball, of Charleston, S. C., on the brief), for plaintiffs in error.

Arthur R. Young, of Charleston, S. C. (Hagood, Rivers & Young, of Charleston, S. C., on the brief), for defendant in error.

Before KNAPP and WOODS, Circuit Judges.

KNAPP, Circuit Judge. By contract of June 20, 1918, plaintiffs in error, plaintiffs below, sold to defendant 500 tons of ground sheep manure, to be delivered in equal monthly quantities from October to December. The contract was in writing and contained this provision:

"Guarantee: Two per cent. ammonia, 3 per cent. B. P. L., and 3 per cent. potash, or equivalent to ammonia and potash, respectively; moisture not to exceed 15 per cent."

The price to be paid was stated as follows:

"Price: Five dollars and fifty cents ($5.50) per unit of ammonia, ten cents ($.10) per unit of B. P. L., and two dollars ($2.00) per unit of potash, f. o. b. cars Omaha, Nebr."

In December six carloads were shipped, aggregating about 190 tons, which defendant rejected as not conforming to the contract; and in April, 1919, plaintiffs brought this suit. Analysis of the shipment showed the following for each of the several carloads:

1. Ammonia .....................2.83   4. Ammonia .....................2.16
   Bone phosphate..............2.99      Bone phosphate..............2.05
   Potash .....................3.52      Potash .....................2.95
2. Ammonia .....................2.64   5. Ammonia .....................2.13
   Bone phosphate..............2.67      Bone phosphate..............2.05
   Potash .....................2.70      Potash .....................3.38
3. Ammonia .....................2.30   6. Ammonia .....................2.07
   Bone phosphate..............2.36      Bone phosphate..............2.40
   Potash .....................3.12      Potash .....................3.05

The court below sustained defendant's contention, saying:

"I rule that that contract does not mean you can make up deficiencies in one by the excess in the other. I hold that that contract on the face of it is repugnant to the idea. I will instruct the jury that there is really no controversy; I don't regard that as a tender. * * * I hold that no performance of the contract has been shown."

A verdict for defendant was accordingly directed, and plaintiffs sued out writ of error.

We are of a different opinion. The subject of sale was a natural product, the exact content of which could not be known, and some variation from the stated percentages must necessarily have been in contemplation. The words "or equivalent to ammonia and potash, re-

spectively," meant, and could only mean, as the almost negligible quantity of B. P. L. (bone phosphate) indicated, that the elements of chief importance and desire were ammonia and potash, and that slight deficiences of one element were to be regarded as compensated by equivalent excess of another. As appears to us, the variations from the contract standard of the shipment in question were quite insufficient to justify rejection. Each of the six carloads had more than 2 per cent. of ammonia. Four of them had more than 3 per cent. of potash; one was a little below and one very slightly below that percentage; and both of these shortages were more than made up by excess of ammonia. Moreover, the insignificance of the phosphate is shown by its trifling cost, only 10 cents a unit, as compared with $5.50 for ammonia and $2 for potash. We cannot believe that defendant had the right to refuse the shipment because of a little deficiency of phosphate amounting at the most to barely 30 cents a ton.

This conclusion is supported by taking into account the value of the rejected shipment. A ton of product of just the guaranteed percentages would come to $17.30 at the contract price; the six carloads tendered were all of greater value, ranging from $17.72 to $22.89. It would seem that defendant was offered a better article, on the whole, than plaintiffs had agreed to deliver.

In short, giving the contract a practical construction, we are constrained to hold that, as respects conformity to the guaranty, the shipment in dispute was a good delivery. The record raises no other question, and none has been considered.

Reversed.